STATE OF NEW JERSEY, DEPARTMENT OF CIVIL SER-
VICE, PLAINTIFF-RESPONDENT, AND JOSEPH M.
NEALON, INDIVIDUALLY AND AS PRESIDENT OF
LOCAL NO. 17 OF THE NEW JERSEY STATE PATROL-
MEN'S BENEVOLENT ASSOCIATION, INC., WILLIAM
McDONNELL, INDIVIDUALLY AND AS VICE-PRESIDENT
OF SAID LOCAL, JOHN P. BOUTINEAU, INDIVIDUALLY
AND AS SECRETARY OF SAID LOCAL, AND JOHN
LEAHY, INDIVIDUALLY AND AS TREASURER OF SAID
LOCAL, INTERVENING PLAINTIFFS-RESPONDENTS, v.
JAMES P. CLARK, ARTHUR J. WILSON AND EDWARD
F. ZELINSKI, INDIVIDUALLY AND AS MEMBERS OF
THE BOULEVARD COMMISSION OF THE COUNTY OF
HUDSON, AND THE BOULEVARD COMMISSIONERS OF
THE COUNTY OF HUDSON, DEFENDANTS-APPELLANTS.

Argued March 29, 1954—Decided May 3, 1954.

*Mr. Frederick J. Gassert* argued the cause for appellants.

*Mr. Joseph Lanigan,* Deputy Attorney-General, argued the cause for respondent State of New Jersey, Dept. of Civil Service (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey).

*Mr. Reynier J. Wortendyke, Jr.,* argued the cause for intervening respondents Joseph M. Nealon, *et al.*

The opinion of the court was delivered by

WACHENFELD, J. The query here is whether the adoption of the Civil Service Law by a referendum in the County of Hudson made the law applicable to the Boulevard Commission of Hudson County and its employees.

*Chapter* 106 of the *Laws of* 1898, now *R. S.* 27:17–2 *et seq.,* created boulevard commissions in counties having county boulevards. When it was passed, the County of Hudson had such a road and hence the statute had the effect of creating the Boulevard Commissioners of the County of Hudson, who are the defendants in this cause.

On January 1, 1912 the Civil Service Law became applicable to the County of Hudson, having been adopted by the voters of the county at the general election in 1911 pursuant to provisions of *chapter* 156 of the *Laws of* 1908 (as amended, now *R. S.* 11:20–1 *et seq.*).

This law is now embodied in *Title* 11 of the current *Revised Statutes* and under *chapter* 20 thereof the manner in which the provisions of the Civil Service Law may become effective in counties, municipalities or school districts is prescribed, providing for its adoption in any such subdivisions by referendum at a general or municipal election.

At the time the Civil Service Law was adopted by referendum, the then members of the commission recognized that it applied to them and their employees and they accordingly complied with the law and submitted their regular payroll to the Civil Service Commission for certification. From 1898 until 1952 the governing body of the County of Hudson, the board of chosen freeholders, considered the boulevard commission as a board or body of the county government and

treated its annual request for funds in the same manner as those of other county agencies. It scrutinized the requests and approved, disapproved or reduced them as it saw fit.

In 1952 the board of chosen freeholders, relying upon *R. S.* 27:17–7, reduced the requested funds of the boulevard commission and the issue arose as to whether or not the board had a right so to do. We passed upon the issue so framed in *Nolan v. Fitzpatrick*, 9 *N. J.* 477 (1952), and agreed with the boulevard commission, holding it was "an independent political corporation," and the financial obligation upon the county was mandatory.

Stimulated by this decision and admittedly basing its inspiration entirely upon the adjudication so made, the commission came to a new and different conclusion and decided that the 1911 adoption of civil service for Hudson County was not now applicable. Accordingly, in January 1953 it failed and refused to submit its regular payroll to the Civil Service Commission for certification. The Department of Civil Service thereupon instituted these proceedings in lieu of prerogative writ under *Rule* 3:81 to compel the submission of the names of the boulevard's employees within the classified service and the wages and compensation to be paid to each at the regular pay intervals from January 16, 1953 agreeable to the provisions of *R. S.* 11:22–20.

After the filing of the complaint, officers of Local 17 of the New Jersey State Patrolmen's Benevolent Association, of which the police employees of the Boulevard Commissioners of the County of Hudson are members, were permitted to intervene as co-plaintiffs by order of the court. The plaintiffs moved for summary judgment and the court below granted the motion, thus determining that the adoption of civil service for the county applied to the commission. From the judgment so rendered the commission appeals, and we certified the cause by our own motion.

The appellants assert there could be no impact of the provisions of the Civil Service Law upon a county, municipality or school district except through a referendum as provided in *chapter* 20 of *Title* 11, but this fact is not here

disputed. The Civil Service Law, it is said, cannot apply to "authorities" which are "independent bodies corporate and politic" without a specific enactment of the Legislature, reliance being placed upon *State Dept. of Civil Service v. Parking Authority of the City of Trenton*, 27 *N. J. Super.* 284 (*Law Div.* 1953), affirmed 29 *N. J. Super.* 335 (*App. Div.* 1954).

The argument presented is narrowed to a determination of the nature of the relationship between the boulevard commission and the County of Hudson. Admittedly, if the commission was merely an agency of the county as the court below held, the 1911 referendum included in its scope the commission and its employees; but if it is independent of the county, it is claimed the referendum had no effect upon it.

This court, through the opinion of the Chief Justice in *Nolan v. Fitzpatrick, supra,* amongst other things held:

"The three boulevard commissioners, who are elected at large in the county for three-year terms, *R. S.* 27:17–2, are given the exclusive right with respect to the maintenance, repair and control of 'a county road,' *R. S.* 27:17–5 (see also *R. S.* 27:17–15), in this case the Hudson Boulevard running some 20 miles north and south throughout the county. The statute vesting these exclusive powers in the boulevard commissioners further gave them 'the use and possession of all property and plant of the county used for maitaining, lighting and repairing such roads,' *R. S.* 27:17–8, as well as the exclusive right to pass ordinances for the regulation and use of the road, *R. S.* 27:17–5, * * *

* * * The Legislature where it desires to confide discretion to a board of chosen freeholders has experienced no difficulty in finding apt language to do so. Where, as here, it has not only employed mandatory language with respect to appropriations but by the entire statutory scheme of relations between the boulevard commissioners and the board of chosen freeholders has indicated an intent to free the boulevard commissioners from responsibility to the board of chosen freeholders, it is not for us to question the wisdom of the legislative intent either as to the method of appropriating funds to the boulevard commissioners or the very existence of the boulevard commissioners as an independent political corporation."

We decided merely that the Board of Chosen Freeholders of the County of Hudson, in a proceeding of this kind, had to appropriate forthwith the full amount requisitioned by

the boulevard commissioners notwithstanding the board's opinion as to the amount, necessity or propriety of the projected expenditures of the commission.

We conceive no sweep in the *Nolan* case sufficiently broad to support the appellants' conclusion that they are relieved from the obligation of *Title* 11, nor do we think it important, as urged, whether there is in law a distinction between the words "autonomous" and "independent."

The appellants contend that the trial court's opinion attempts unsuccessfully to differentiate between the *Parking Authority* opinion and the present situation and that there is merely a "surface distinction of terms" which is without basis in law.

*State Dept. of Civil Service v. Parking Authority of the City of Trenton, supra,* gives little comfort to the commission's endeavor. There the fundamental principle shaping the result arrived at turned upon whether the functioning of the authority was made possible by revenues received through its own operation and efforts or by funds siphoned from and dependent upon taxes paid by the municipality. The court held:

"The authority subsists on tolls, not on taxes. It is revenue-producing. It does not depend on the State's or municipality's taxing power to function. It is an independent, autonomous public corporation."

Here the factual situation is entirely different. Although the commission may be completely independent as to the manner of its operation, nevertheless its very existence and ability to function depend entirely upon and are based solely upon the financial sustenance it receives from the county through its tax revenues. As the court below pointed out, and we agree:

"The most important difference between the boulevard commissioners and the 'Authorities,' and it is the crucial one, is that the former depend entirely upon the support of the board of chosen freeholders' taxing power to function; the latter are self-supporting. The fact that it is mandatory upon the board of chosen freeholders

to raise by general taxation or a bond issue, the moneys requisitioned by the boulevard commissioners, does not suffice to justify their classification, for all purposes, in the category of 'authorities' * * *."

The appellants admit the commission draws its funds from the county but suggest "its subsisting functioning power" comes from the Legislature. *R. S.* 27:17–2 *et seq.*

The issue encountered seems controlled by the pronouncement in *Newark Library Trustees v. Civil Service Comm.*, 86 *N. J. L.* 307 (*E. & A.* 1914):

"* * * we may concede the independent corporate character of the Free Public Library, for which the appellant contends, but the essential fact remains that its employes are in the paid service of the municipality, which has accepted the provisions of the civil service act, and the conclusion logically follows, in view of our former adjudication, that the appellant's employes are subject to the provisions of the civil service act."

See *Parks v. Union Cty. Park Comm.*, 7 *N. J. Super.* 5 (*App. Div.* 1950), and *Glick v. Trustees of Free Public Library*, 2 *N. J.* 579 (1949), in which we held: "It is an agency of the municipality notwithstanding its incorporation as a body politic."

We see nothing in the *Nolan* case, *supra,* which either expressly or impliedly conflicts with these adjudications. After the referendum of 1911, for over 41 years the boulevard commission complied with and acted under the Civil Service Law and has without exception recognized its application. Such a contemporaneous construction over a period in excess of 40 years is of substantial importance in weighing the issues where there is a debatable question. Under such circumstances the long-continued exposition exhibited in the usage and practice requires the construction put upon it to be accepted by the courts as a true one.

"The legal rule is succintly expressed in the maxim of the civil law, '*contemporanea exposito est fortissima.*' The doctrine has such prevalence that it is applicable, not only in the exposition of statutes, but in the interpretation of constitutions of governments." *In re Hudson Cty.*, 106 *N. J. L.* 62 (*E. & A.* 1928). *Board v. Cronk,* 6 *N. J. L.* 119 (*Sup. Ct.* 1822).

■ The principle is well established by a wealth of authority that resort may be had to long usage, contemporaneous construction and practical interpretation in construing statutes, to ascertain the meaning of technical terms, to confirm a construction deduced from the language, to explain a doubtful phrase or where the meaning is obscurely expressed. *Suburban Electric Co. v. Elizabeth*, 59 *N. J. L.* 134 (*Sup. Ct.* 1896).

■ Many decisions have recognized that the purpose of the Civil Service Law is to procure efficient public service and to secure tenure during good behavior for public officers and that the law should be given a broad construction to bring employees within its operation. *Sullivan v. McOsker*, 84 *N. J. L.* 380 (*E. & A.* 1913); *Scancarella v. Dept. of Civil Service*, 24 *N. J. Super.* 65 (*App. Div.* 1952).

■ As between the two possible constructions of the statute, the one should be adopted which effectuates rather than defeats the legislative purpose. *Moore v. Johnson*, 85 *N. J. L.* 40 (*Sup. Ct.* 1913).

■ The boulevard commission and the Civil Service Commission have mutually, over a great many years, treated the Civil Service Law as applicable to the Boulevard Commissioners and their employees, and, having given the law this practical construction, we know of no reason why we should depart therefrom.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.