32 N.J. Super. 39 (1954)
107 A.2d 722
HAROLD W. WALSH, APPELLANT,
v.
DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY AND COUNTY OF HUDSON, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 28, 1954.
Decided September 3, 1954.
*41 Before Judges EASTWOOD, FREUND and FRANCIS.
Mr. Leo Rosenblum argued the cause for the appellant (Mr. Jacob J. Levey, attorney).
Mr. Frederick J. Gassert, Jr., Deputy Attorney-General, argued the cause for the respondent Department of Civil Service (Mr. Grover C. Richman, Jr., Attorney-General, attorney).
The opinion of the court was delivered by FRANCIS, J.A.D.
The sole issue presented by this appeal is whether the Chief Probation Officer of Hudson County is *42 in the classified or unclassified service under the Civil Service Act, R.S. 11:4-1, et seq.
The record discloses that since 1929 appellant had been a court crier in the Common Pleas Court and the County Court of Hudson County. On May 1, 1950 the chief probation officer retired and on May 10, 1950 Walsh was appointed to succeed him by an order of the four county judges which recited that the appointment was made "By virtue of the power vested in this Court by Chapter 156 of the Laws of 1929, and in accordance with the rules and regulations of the New Jersey State Civil Service Commission."
The Civil Service Commission refused to approve the selection, saying that chief probation officer is a career position in the competitive division of the classified civil service and that a promotion examination, which would be open to employees in the next lower grade or grades of the probation office, was a prerequisite to the appointment.
Subsequently, a formal hearing was held by the Commission at which testimony was taken respecting the duties of the chief probation officer and a number of exhibits relating thereto were received. However, the view originally taken was adhered to and since the result was to disqualify Walsh, this appeal followed.
The statute controlling the appointment as it existed at the time in question provided:
"The judge or judges of the county court in each county, or a majority of them, acting jointly, may appoint a chief probation officer, and, on application of the chief probation officer, such men and women probation officers as may be necessary. All probation officers appointed subsequent to April 22, 1929, who are to receive salaries shall be appointed in accordance with the rules and regulations of the civil service commission. * * *
Chief probation officers and probation officers in office April 22, 1929, shall continue to serve in their respective counties under the provisions of this chapter." (Italics ours.) N.J.S. 2A:168-5; L. 1929, c. 156, § 5.
Appellant contends that since the italicized sentence does not specifically include chief probation officers, the Legislature *43 intended to exclude them and to limit the benefits of civil service to probation officers alone.
In the study of a problem such as this it must be kept in mind that the object of the Civil Service Act is to secure efficient public service in all of the various departments of state, county and municipal government. One of the means prescribed for accomplishing that objective is the insulation of the appointment of persons to offices or positions in the classified service against considerations of politics, personal favoritism or partisanship in any form. And in order to effectuate the broad, salutary public policy proclaimed by the Legislature, the widest possible range consistent with a fair and reasonable interpretation of the language employed should be given to the act. State Dept. of Civil Service v. Clark, 15 N.J. 334 (1954).
The insulation of such employees stems from Art. VII, § I, par. 2, of the Constitution of 1947 which provides that
"* * * appointments and promotions in the civil service * * * shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive; * * *."
This language appears almost verbatim in the Civil Service Act and regulates appointments and promotions in the State and county service. R.S. 11:4-2; R.S. 11:21-3.
In defining the classified service for both State and county employment, substantially the same language was used by the Legislature. R.S. 11:4-3; R.S. 11:22-3. All persons in the paid service of both branches of the government "unless otherwise provided in this subtitle" are included therein, "except positions held by persons enumerated in section 11:4-4 of this title" [for the state service], or "11:22-2 of this title" [for the county service].
Sections 4-4 and 22-2 specifically list the persons who are placed in the unclassified service and who therefore are not entitled to the security and benefits provided by the act.
In determining whether a person is within the classified service, the duty to give the widest possible range to the law can be satisfied only by declaring for inclusion unless *44 a clear exclusion is manifested by the specific listing of the unclassified positions. Doubt should be resolved in favor of inclusion unless violence would be done to the statutory language.
In more recent years the problem of deciding the classification of a position in the state or county service which is not assigned to the unclassified division, has been given specifically to the Civil Service Commission. N.J.S.A. 11:7-11; 11:22-50; L. 1948, c. 121, §§ 2, 6. And when the Commission has exercised this authority the courts will interfere only where the conclusion reached is patently incompatible with the language and spirit of the law. Cf. Falcey v. Civil Service Commission, 16 N.J. 117 (June 28, 1954); DeStefano v. Civil Service Commission, 130 N.J.L. 267 (E. & A. 1943); DeStefano v. Civil Service Commission, 127 N.J.L. 58 (Sup. Ct. 1941).
Chief probation officers are not among the persons specifically listed in the unclassified service. Consequently they should be considered as in the competitive class unless a clear basis exists for exclusion. As already indicated, appellant claims exclusion is shown (a) by failure of the Legislature to make specific reference to such officers in the section of the Probation Act quoted above, and (b) because chief probation officers are department heads and consequently are specifically relegated to the unclassified service, whether in state or county employment. N.J.S.A. 11:4-4(b); 11:22-2(d).
Reference to the legislative history of the section of the Probation Act regulating the appointment of probation officers throws some interesting light on the problem.
The first such act was adopted in 1900. L. 1900, c. 102, p. 289. It authorized the judges of the Court of General Quarter Sessions of each county "to appoint one officer to perform the duties of a probation officer * * * under the direction of said court." In first and second class counties as many "assistant probation officers," not exceeding three, as were considered necessary, could be appointed with the consent of the board of chosen freeholders. It was provided *45 also that "each probation officer shall hold office during the pleasure of the court making the appointment." (Italics ours)
"Each probation officer" was given the powers of a constable; was ordered to keep records of cases committed to his care; "the probation officer" when directed by the court was required to investigate persons arrested for crime; compensation of "the probation officer" was established by the court and paid by the county, except that in first and second class counties the freeholders were empowered to fix the compensation of "such probation officer" where more than one "such probation officer" was appointed; in case of absence or disqualification of "any probation officer" for any cause, the court might make a temporary appointment; and the necessary expenses and disbursements incident to the performance of the duties of "the probation officer" were to be repaid to him. (Sections 2-8) No provision was made for a chief probation officer as such. It is apparent that the probation officer occupied that status and the assistant probation officers corresponded with the present day probation officers.
Moreover it cannot be doubted that none of these officers acquired any tenure; they all served at the will of the court.
In 1906 the act was reenacted in substantially the same form, the only change of any consequence being the conferring of the power of arrest on "the probation officer" and on "each of his assistants" in the event of violation of probation. 2 C.S. 1879, § 180; L. 1906, c. 75.
The Civil Service Act was adopted in 1908. L. 1908, c. 156, p. 235. In 1911, sections 1 and 2 of the Probation Act were amended. The power to appoint "one officer to be known as chief probation officer, to perform the duties of a probation officer, as hereinafter defined * * *" was conferred on the judge or judges of the Court of Common Pleas. It was further provided that in counties of the first and second classes, on application of the chief probation officer, the judges could appoint as many assistant probation officers, not exceeding five in the former and three in the latter, as might be needed. L. 1911, c. 225.
*46 The stipulation for service at the pleasure of the court was dropped. It is difficult to avoid the conclusion that there was a causal relation between the existence of the Civil Service Act and this amendment.
The records before us show that in 1915 a controversy arose as to whether the Chief Probation Officer of Atlantic County was in the classified service or could be appointed by the Court of Common Pleas without competitive examination. A written opinion of the Attorney-General advised the Commission that he was subject to examination and that the Civil Service Act could not be ignored by the court. Apparently the matter did not get into litigation and the appendix presented does not disclose the action taken. The Commission's records before us begin as of March 1, 1934 and as of that time the chief probation officer was registered in the classified service.
It does appear that in Hudson County, at least as far back as 1919, the chief probation officer was listed in the classified service by the Commission and that such an appointment was made on November 13, 1919, following a promotional examination. It is noted also that in 1937, following the death of the 1919 appointee, the same course was followed in the case of Walsh's predecessor.
Revision of the act took place again in 1922 (L. 1922, c. 266), but no substantial change was made in the manner of appointment nor was any effort made to place the chief probation officer among unclassified employees. However, the title "assistant probation officer" was altered to "probation officer."
In 1929 the provision under consideration here was added, namely:
"All probation officers hereafter appointed who are to receive salaries shall be appointed in accordance with the rules and regulations of the Civil Service Commission. Chief probation officers and probation officers now in office shall continue to serve in their respective counties, under the provisions of this act."
L. 1929, c. 156, § 5. The addition, in our judgment, simply served to give express legislative confirmation to the construction *47 of the statute and to the course of action which had been followed for some years by the Commission. Even considered apart from either the historical evolution of the Act or the construction by the Commission, we believe the language displays a plain intention to designate chief probation officers and probation officers as career positions under the Civil Service Act.
If the words "all probation officers" were construed not to include chief probation officers a most anomalous situation would result. A chief probation officer would not be required to take an oath of office nor to post a bond because section 10 (N.J.S. 2A:168) imposes those obligations on "each probation officer"; his accounts would not have to be audited since only those of "all probation officers" are subject to it (§ 10); the expenses incurred by him in the performance of his duties would not be repaid for such reimbursement is provided for "salaried probation officers" (§ 8); he would have no right to arrest since such power is conferred on "probation officers" (§ 11); no temporary appointment could be made in case of his absence or disqualification, as section 9 refers only to the absence or disqualification of "any probation officer."
In connection with these sections dealing with powers and duties of probation officers it must be recalled that most of them trace back to the earlier statutes when, as already pointed out, the probation officer was the counterpart of the more modern chief probation officer. Furthermore, even today under the current act there might be but one probation officer in a county. In this event he would be the chief probation officer. Consequently if appellant's contention were sound the operation of the probation office would be curtailed severely because the chief could not claim the authority nor be burdened with the duties given to "probation officers."
In connection with section 9 it is noteworthy also that in the 1906 revision, when the "probation officer" corresponded to the present chief probation officer, an obviously unqualified temporary appointment was authorized. (L. 1906, c. 75, *48 § 4). The 1922 revision altered this to read that upon the absence or disqualification of any probation officer a "pro tempore" appointment could be made "upon the application of the chief probation officer." (L. 1922, c. 266, § 4). However, the 1929 revision dropped this clause and reverted to the substance of the original language. The probable reason was the lawmakers' desire to make certain that chief probation officers could be replaced temporarily, particularly in counties where the chief was the only probation officer.
It is incumbent upon the judiciary to consider the various sections of a statute as integral parts of a homogeneous whole and to reach the legislative intent in that way if it is reasonably possible to do so. 2 Sutherland, Statutory Construction (3d ed. 1943), § 4703. Applying the rule here, we have no hesitancy in saying that both the legislative history and the language of the entire act point irresistibly to the conclusion that "all probation officers" means chief probation officer as well as probation officers.
In addition, the records included in the appendix show that for a number of years the Civil Service Commission has construed the present act, and at least some of its predecessors, to require the inclusion of the chief probation officer in the classified service.
The documents submitted are photostatic copies of the appointment and service record of the chief probation officer in all 21 counties. They demonstrate that each such position has been placed in the competitive class. Since no explanation was furnished with these service documents, we cannot say with certainty how long this condition has existed in each county, but obviously it has been the case for a good many years, and, so far as Hudson County is concerned, promotional examinations were ordered for the position at least as far back as 1919.
The practical construction of the statute by the Commission over a period of years without interference by the Legislature is evidence of its conformity with the legislative intent and strongly inclines the courts to concurrence therein. State Dept. of Civil Service v. Clark, 15 N.J. 334, 340; *49 Sutherland, supra, §§ 5107, 5108, 5109. And see the last amendment, L. 1953, c. 311; N.J.S. 2A:168-5.
The fact that the particular interpretation was adopted as part of the routine administration of the law rather than following a formal hearing in an adversary proceeding or a conference of the Commission as a body does not prevent this concurrence. Norwegian Nitrogen Products Co. v. U.S., 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796, 807 (1933); Vom Bauer, Federal Administrative Law, § 477 (1942). In passing, it may be observed that in recent years two cases were presented to the courts involving the appointment of chief probation officers and in neither one was the issue raised that the sole power of appointment was lodged in the county courts. Falcey v. Civil Service Commission, supra, 16 N.J. 117 (June 28, 1954); Mangan v. Department of Civil Service, 29 N.J. Super. 303 (App. Div. 1954).
It does not appear to be necessary to consider the argument that a chief probation officer qualifies as a department head and is therefore barred from the classified service. As we have said, in our judgment the words "all probation officers" include the chief probation officer and it must be assumed therefore that the Legislature did not consider him to be a department head. The fact that he has authority to appoint certain clerical help, subject to civil service regulation, does not militate against the result we have reached. It cannot be overlooked that he is subject to the direction and control of the court, that his important assistants can be appointed only on order of the court and that the rules and regulations "with respect to the management and conduct of the probation officers and other employees" must be authorized by the court. N.J.S. 2A:168-7. The subordinate character of his authority constitutes an additional reason for concluding that he is not in the category of a department head. The control of the county judges over the probation work is so pervasive that it would be more realistic to describe them as such head.
For these reasons we conclude that the ruling of the Commission was correct and it is therefore affirmed.