107 N.J. Super. 436 (1969)
258 A.2d 736
PASSAIC VALLEY SEWERAGE COMMISSION, A PUBLIC CORPORATION, PLAINTIFF,
v.
CITY OF PATERSON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 7, 1969.
*437 Mr. Thomas E. Durkin, Jr., attorney for plaintiff.
Mr. Sam Weiss, appeared for intervenor, City of Newark (Mr. Philip E. Gordon, attorney).
Mr. Joseph L. Conn, attorney for defendant.
*438 JOELSON, J.S.C.
The Passaic Valley Sewerage Commission has filed a two-count complaint against the City of Paterson. In the first count it seeks judgment in the amount of $217,476.18, together with interest and costs, for the city's share of "maintenance, repair and operation." In the second count plaintiff alleges, in the alternative, that if it is not entitled to judgment on the first count for the cost of "maintenance, repair and operations," it is entitled to judgment under N.J.S.A. 58:14-13, which deals with "apportionment of cost of construction."
Defendant has filed an answer contending that the expenses are for capital improvements for which the Commission is not authorized by law to assess defendant. Defendant has also filed a counterclaim seeking a declaratory judgment that in the event it must pay the claim of the Commission, it may finance the cost through the issuance of municipal bonds.
The City of Newark has intervened in the matter in support of the position of the Commission.
It is undisputed that Paterson is a contracting member municipality of the Passaic Valley Sewerage Commission. That body was established pursuant to an act of the Legislature in 1902 (N.J.S.A. 58:14-1). Paterson, although denying any obligation to pay for the work for which it has been billed, does concede that if it is required to pay, then the sum of $217,476.18 for which it has been billed is an accurate computation of the amount it would owe for operation, maintenance and repairs.
Commencing in the fiscal year 1962, after consultation with its contracting member municipalities and apparently with their approval, the Commission created a so-called "retainage fund" which was contributed to by the member municipalities. This fund was created and utilized for the purpose of maintaining, repairing and improving the sewerage system. Since the inception of the fund in 1962, and until 1969, all contracting municipalities, including Paterson, have paid their assessed share into the fund. In *439 1969 all the members except Paterson paid their assessed share.
The record discloses that the items for which the city has declined to pay its proportionate annual share, and the total cost of such items, are as follows: additional grit chambers and screen, oil and scum handling facilities, $7,200,000; repair to trunk sewer at Gouverneur Street, $1,000,000; chlorination facilities, $1,050,000; land purchase, $450,000; basin repair and modifications, $500,000, and general work around plant, $300,000.
Paterson paid that portion of its assessed annual share which it considered to represent current operations, but asserted that it is not obliged to pay any portion of the cost of the items in the paragraph immediately above, which it claims to be capital improvements. The court finds the refusal of the city to pay its total assessed share not to be justified, and that plaintiff is entitled to a judgment of $217,476.18.
It appears from the reading of the pertinent statutory provisions that the Legislature, both when the Passaic Valley Sewerage Commission was created (N.J.S.A. 58:14-1 et seq.) and when it was enlarged and improved in 1953 (N.J.S.A. 58:14-34.1 et seq.), intended that each contracting municipality pay its share of the cost of work necessary to be done from time to time to keep the system in a state of efficient operation. The testimony reveals that the expenditures for the projects for which Paterson has been billed are major repairs involving what normally may be regarded as capital improvements. However, it is the opinion of the court that the Legislature's intent appears to include such items among those for which the contracting municipalities are financially responsible as maintenance, repairs and operations.
N.J.S.A. 58:14-13, which deals with the cost of the original construction of the sewer, plant and works, provides a formula for apportioning the construction costs among the contracting municipalities. N.J.S.A. 58:14-15 *440 then goes on to require that "the cost of maintenance, repair and operation of said sewer, plant and works shall * * * be apportioned annually to the respective municipalities entering into the contract," and provides a formula for such assessment. The city contends that it is liable under neither N.J.S.A. 58:14-13 nor N.J.S.A. 58:14-15.
It is an established rule of statutory construction that as between two possible constructions of a statute, the one should be adopted which effectuates rather than defeats the Legislature's purpose. State Department of Civil Service v. Clark, 15 N.J. 334 (1954). Similarly, in Hasbrouck Heights Hospital Ass'n v. Borough of Hasbrouck Heights, 15 N.J. 447 (1954), the court said that "a statute should not be construed to permit its purpose to be defeated by evasion, and in an investigation of the law in this respect, the purpose of the statute must be examined and the practical results flowing from its enforcement."
Certainly, it cannot reasonably be expected that the Legislature would have wished to establish the sewerage system without providing any method for paying for major repairs of a long-term nature which must be made in any project for its continued operation. If such an interpretation were to be placed upon the statute, the purpose of the legislation, which was to provide a satisfactory system of sewerage disposal would be defeated, and grave danger to the public health would ensue.
Reference should also be made to N.J.S.A. 58:14-34.1 et seq. Although counsel for both parties have stipulated that it is not directly applicable to the case now under consideration, there is language in that statute which is helpful as a guideline in the present case.
N.J.S.A. 58:14-34.1 et seq. was enacted in 1953 because of the necessity to construct a more modern and effective system. It authorized a $10 million bond issue by the Commission for that purpose. In its declaration as to the need for repair, replacement and improvement the Legislature stated as follows in N.J.S.A. 58:14-34.10 (d):
*441 the expense of meeting such need and providing repair, replacement and improvement, together with any amortization or interest charges in connection with such expense, is in substance and effect part of the cost of maintenance, repair and operation of the sewerage system.
Thus, it is apparent that the Legislature provided for the bond issue for the work required in 1953, not because it was legally impossible to have the necessary work done by the expense being shared annually by the contracting municipalities as a cost of maintenance, repair and operation, but because it then considered that the annual cost to each municipality would have been too burdensome. This conclusion is fortified by the fact that by its terms N.J.S.A. 58:14-34.10(f) afforded "a practical means of relief * * * to permit and require the contracting municipalities as users of the sewerage system to meet and pay the expense of meeting such need on an economical and reasonable basis over a reasonable number of years." Unfortunately for Paterson, no similar legislation has been enacted for the substantial projects which form the basis of the assessments presently under consideration.
Having established that plaintiff is entitled to judgment on the first count of its complaint, we now consider plaintiff's demand for interest. The court is of the opinion that no such interest should be allowed. It is well established that interest should not be allowed "where the damages are unliquidated and not capable of ascertainment by mere computation, or where a serious and substantial controversy exists as to the amount due under a contract." Jardine Estates, Inc. v. Donna Brook Corp., 42 N.J. Super. 332 (App. Div. 1956); Horst Co. v. Peter Breidt City Brewery, 94 N.J.L. 230 (E. & A. 1920).
In this case the parties disagreed as to whether all of the items for which they were billed were proper charges against defendant. It might reasonably be argued that the municipality was responsible for the payment of some of the items, but not all. Furthermore, there was a very real *442 controversy as to defendant's liability. In Jardine Estates, Inc. the court stated that there are no longer "hard and fast rules" concerning interest, and that principles of equity should be applied to accomplish justice in each particular case. In view of the foregoing, the court finds that because of the bona fide controversy between the parties, interest should not be allowed.
Finally, the court will deal with defendant's counterclaim for a declaratory judgment that it may issue bonds in order to pay the amount assessed against it by plaintiff. There is no justiciable issue which would justify the court in rendering a declaratory judgment. This is based upon the fact that plaintiff alleges that a sum of money is due from defendant, but throughout this matter has consistently taken the position that it has no interest in the manner in which defendant raises that sum of money.
In New Jersey Turnpike Authority v. Parsons, 3 N.J. 235 (1949), the court considered an application for a declaratory judgment to approve a bond issue by plaintiff. Although finding that the facts in that case justified the use of the remedy, the court stated that the remedy "is circumscribed by the salutary qualifications that jurisdiction of the Courts may not be invoked in the absence of an actual controversy." The Supreme Court then cited Borchard, Declaratory Judgments (2d ed. 1941), at 29:
Not only must the plaintiff prove his tangible interest in obtaining a judgment, but the action must be adversary in character, that is, there must be a controversy between the plaintiff and a defendant, subject to the Court's jurisdiction, having an interest in opposing his claim.
Likewise in New Jersey Bankers Ass'n v. Van Riper, 1 N.J. 193 (1948), the court insisted on the requirement that there be an adversary party before relief could be granted under the Declaratory Judgments Act, N.J.S.A. 2A:17-50. The court stated that while it was not unmindful of the salutary purposes of that act and the need for its liberal *443 construction, there must be a party before the Court capable of undertaking "The defense or enforcement of an outstanding interest adverse to that which the plaintiff purports to represent."
In the present case the defendant has submitted a brief and argued orally in support of its contention that it should be allowed to issue bonds, and has requested a declaratory judgment that it be authorized to do so. However, because plaintiff has taken no position on the matter, the court is without the opportunity to have had a presentation of the countervailing point of view. Therefore, the counterclaim seeking a declaratory judgment is hereby dismissed.