COUNTY OF MORRIS, APPELLANT, v. STATE OF NEW JERSEY, DEPARTMENT OF CIVIL SERVICE, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 25, 1980—Decided December 31, 1980.

Before Judges BOTTER, KING and McELROY.

*John J. Harper,* Special Assistant County Counsel, argued the cause for appellant (*Armand L. D'Agostino,* Morris County Counsel, attorney).

*William Harla,* Deputy Attorney General, argued the cause for respondent (*John J. Degnan,* Attorney General, attorney; *Erminie L. Conley,* Assistant Attorney General, of counsel and *Peter J. Calderone,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

KING, J. A. D.

This case raises the question of whether a physician in the local (county) service is a classified or unclassified official under *N.J.S.A.* 11:22–2(p) for civil service purposes. The appellant, County of Morris, contends that the Civil Service Commission erred in concluding that a county physician was in the classified service. We agree with appellant and reverse.

On November 8, 1977 the Morris County Board of Freeholders adopted a resolution appointing Anthony Komninos, M.D., as "County Physician" for a term of one year at a $52,000 per year salary. He was given the title of Director of the Department of Medical Services under the County Administrator's office. In this full-time position Dr. Komninos was to perform the following services:

1. pre- and post-employment physical examinations.

2. annual physical examinations for County employees.

3. treat County employees injured on the job.

4. interpret x-rays taken of employees injured on the job and of residents of the County nursing home.

5. serve as County Jail physician which includes daily sick call at the jail and treatment of inmates.

6. serve as physician for the County Youth Center housing detained juvenile delinquents.

7. serve as physician for the County Juvenile Shelter housing juveniles in need of supervision.

8. conduct tuberculin tests.

Dr. Komninos' clinic was located in the county-owned Shongum Chest Clinic Building; he supervised a three-person staff: a nurse, an x-ray technician and a secretary.

The previous "county physician" was titled "Director of the Shongum Chest Clinic." In 1964 this position was certified as unclassified. The Shongum Chest Clinic was closed by the county in 1978, after which Dr. Komninos was hired and the new position of Director of Medical Services established.

On January 1, 1979 appellant county filed a request with the Civil Service Commission for personnel action on whether Dr. Komninos' new position would be unclassified. On April 4 the position was certified as classified. Review by the Commission was requested. On October 30 a final administrative decision was issued affirming that the position was classified. The County appeals.

All persons in the paid service of state and local government are within the classified service under the Civil Service Department, *N.J.S.A.* 11:22–3 and *N.J.S.A.* 11:4–3, "except positions held by persons enumerated in section 11:4–4 of this title" (for state service), or section "11:22–2 of this title" (for county service). This court has stated that any "doubt should be resolved in favor of inclusion" in the classified service. *Walsh v. Dept. of Civil Service*, 32 *N.J.Super.* 39, 43–44 (App.Div.1954).

The County of Morris relies on *N.J.S.A.* 11:22–2(p) in contending that the position of Director of County Medical Services is unclassified. This section states in pertinent part:

The unclassified service shall not be subject to the provisions of this subtitle and shall include the following:

\* \* \* \* \* \* \* \*

p. All officials of county or municipal institutions who must of necessity be physicians.

There is no definition of "official" or "institution" pertaining to the above statute within the definitional section dealing with the local service. *N.J.S.A.* 11:19–1.[1]

The Commission concluded that subsection (p) of *N.J.S.A.* 11:22–2 was applicable only "to physicians in an institutional setting," *i. e.,* "buildings, staff or residents [sic] facilities where patients are housed on a continuing basis." With all deference to the Commission's expertise and long-standing practice, we conclude that the word "institution" in subsection (p) was defined too narrowly. The Commission's definition of institution would require that only physicians employed in facilities housing in-patients on a 24-hour basis would be in the unclassified service; all other employed physicians in the local service would be classified. We can make no sense of the dichotomy and see no necessity for it. Absent a specific statutory definition, we are compelled to give words "their generally accepted meaning, according to the approved usage of the language . . . unless inconsistent with the manifest intent of the legislature." *N.J.S.A.* 1:1–1. We find nothing on the face of the statute or in the spirit of the civil service laws which compels such a narrow reading of the word institution.[2] The word "institution" is

---

[1] The section dealing with the state service contains the following definition of "institution":

"Department or institution" means a division of the executive branch of the state government, charged with definite responsibility and authority and which is not a part of another division or branch thereof. [*N.J.S.A.* 11:3–1.]

The exclusionary statute pertaining to physicians in the state employment is *N.J.S.A.* 11:4–4(q) which exempts "All superintendents, directors or other employees in the State Government, who of necessity must be licensed physicians, surgeons or dentists" from the classified service.

[2] The difference in language between the state and county physicians' exclusions may not be indicative of a difference in legislative intent, because the exclusions were enacted at different times. The state exclusion was enacted by *L.*1930, *c.* 176, § 44; the county exclusion was enacted by *L.*1948, *c.* 121, § 5.

defined in *Funk & Wagnalls, New Comprehensive International Dictionary of the English Language* (1973) as:

> a corporate body or establishment instituted and organized for an educational, medical, charitable, or similar purpose, *or* the building occupied by such a corporate body [emphasis added].

The word "institution" is defined in *Webster's Third New International Dictionary* (1966):

> b: an established society or corporation; an establishment or foundation especially of a public character, c: a building or the buildings occupied or used by such organization.

The Commission relied solely on a definition of "public institution" contained in *Black's Law Dictionary* (Rev. 4th ed. 1968) 941: "One which is created and .exists by law or public authority, *e. g.*, an asylum, charity, college, university, schoolhouse, etc." *Black's, supra*, (5th ed. 1979) 719 contains a more general definition of "institution": "An establishment, especially one of eleemosynary or public character or one affecting a community." The general usage of the word is not limited perforce to buildings and structures, as held by the Commission, but includes the concept of a dynamic organization.

■ We conclude that the Morris County Director of Medical Services is an official of an establishment organized for medical services partaking of a public character, the Morris County Department of Medical Services. The appendix filed by the Attorney General on behalf of the Commission contains a letter from Dr. Komninos to the County Administrator which instructively exemplifies the work he performed on behalf of the Department of Medical Services during the month of January 1979. These patient contacts for examinations or treatment included: (1) 180 County Jail, (2) 55 Youth Center, (3) 10 Juvenile Shelter, (4) 56 preemployment physicals, (5) 53 Morris View (nursing home) examinations, (6) 39 job-accident incidents, (7) 140 x-ray reviews, (8) 84 Tuberculin tests and (9) 9 miscellaneous. A portion of this work was performed at Dr. Komninos' clinic and a portion at the various physical institutions he

served—the jail, the youth shelter, the youth detention center and the nursing home.

The conclusion we reach on the scope of the word "institution" does not violate the civil service goal of securing efficient public service "by examination, which as far as practicable, shall be competitive." *N.J.Const.* (1947), Art. VII, § 1, par. 2. Respondent conceded in its brief and at oral argument that physician-candidates for the local and state service are not competitively tested. Rather, candidates are evaluated on education and experience, *N.J.A.C.* 4:1–9.4, "similar to testing procedures for certain other positions that may require specific licensing or certification such as engineering, nursing or attorney titles." (Respondent's brief, page ten). The primary consideration is the possession of a New Jersey professional license. Nor do the tenure aspects of the civil service justify the Commission's narrow definition of the word "institution" in *N.J.S.A.* 11:2–2(p) limiting its application exclusively to physicians employed in in-patient medical facilities. We see no reason to prefer the unclassified service for a physician, full or part-time, who serves medical in-patients exclusively and the classified service for a physician who performs the duties of a county physician as described above.

Ultimately, the interpretation of statutes is a judicial, not an administrative function. *Mayflower Securities Co. v. Bureau of Securities,* 64 *N.J.* 85, 93 (1973). We conclude that the Director of the Department of Medical Services of Morris County with the above described duties was an official of a county institution who must of necessity be a physician within the meaning of *N.J.S.A.* 11:22–2(p) and therefore is a member of the unclassified local service.

Reversed.