## THE BOROUGH OF COLLINGSWOOD, APPELLANT, v. THE STATE WATER SUPPLY COMMISSION, RESPONDENT.

Submitted December 18, 1913—Decided March 16, 1914.

1. The powers conferred upon the State Water Supply Commission (*Pamph. L.* 1907, *p.* 633) and a supplement thereto (*Pamph. L.* 1910, *p.* 551), are not limited to the approval of the physical structure proposed, but commit to it the power to determine whether what is proposed is justified by public necessity or reasonably anticipated public use.
2. Where the Supreme Court has determined as a question of fact that the determination of such commission was reasonable, the conclusion of the Supreme Court will not be reviewed on appeal, if there was any evidence justifying such finding.

---

On appeal from the Supreme Court, whose opinion is reported in 55 *Vroom* 104.

For the appellant, *John W. Wescott* and *Francis D. Weaver.*

For the respondent, *Edmund Wilson,* attorney-general.

The opinion of the court was delivered by

BERGEN, J. The appellant, having determined to construct a municipal water-supply plant for the purpose of supplying the inhabitants of the borough of Collingswood with a public water-supply, presented to the State Water Supply Commission plans and specifications for the proposed

plant, and petitioned the commission to sanction and approve the same, such approval being necessary before the appellant could lawfully divert water "from any new or additional sources of water-supply," for the purpose of supplying "the inhabitants of any municipality with water, either from surface, sub-surface, well or percolating sources." *Pamph. L.* 1910, *p.* 551. *Wilson* v. *Collingswood,* 52 *Vroom* 634.

The petition sets out that the proposed supply of water is intended to be drawn from artesian wells sunk along the bank of Cooper river in the borough of Collingswood, at which point there are numerous unfailing springs. The commission after hearing the testimony offered by the parties, made the following order, "and thereupon, on motion duly seconded and carried, it was ordered that the application of the borough of Collingswood for permission to acquire a new water-supply be refused." The appellant thereupon applied for, and was allowed, a writ of *certiorari* requiring the State Water Supply Commission to certify the "said decision" and all proceedings concerning the same to the Supreme Court, and this being done, that court affirmed the order or resolution of the state board, from which determination the appellant has appealed.

In considering the merits of this appeal, which is limited by the appellant to the legality and reasonableness of the order appealed from, it is manifestly appropriate to first consider whether the order is within the purview of the statute which is relied upon to support it. It is common knowledge that prior to the statute, to which reference will be made hereafter, municipalities, private corporations and individuals in different parts of this state were acquiring and diverting to their use, a considerable portion of the public water-supply, some under laws which delegated such power to local governments established by the legislature, but in many cases by those whose right to do so was, perhaps, of doubtful authority, and the potable waters of the state were being rapidly gathered into the hands of a few, a condition which, in view of the rapid increase of population, became a

cause of great anxiety, if not of alarm, to such inhabitants of the state as were not benefited by such ever growing segregation for the use of particular localities.

The question became so momentous that in 1907 the legislature undertook to deal with it, and in that year (*Pamph. L., p.* 633), a statute was enacted which provided for the appointment of five persons to constitute a commission to be known as the State Water Supply Commission, "charged with a general supervision over all the sources of potable and public water-supply to the end that the same may be economically and prudently developed for the use of the people of this state." Section 2 of this act declares that no municipal corporation engaged in supplying, or proposing to supply its inhabitants with water "shall have power to condemn lands or water, or any new or additional source of water-supply, or to divert water from such new or additional source until such municipal corporation, corporation or person has first submitted descriptions thereof, which shall be accompanied by maps and plans, to said commission, and until said commission shall have approved the same." Section 3 authorizes municipal corporations to make application to the commission for the approval of its plans for obtaining a new or additional source of water-supply, and provides for a public hearing upon due notice at which all persons affected by the proposed plans may be heard for or against the granting of the application. It further provides that after due hearing "the commission shall decide whether the plans proposed are justified by public necessity, or reasonably anticipated public use, and whether such plans interfere unduly with the opportunity of other municipalities to obtain a water-supply by the taking of waters necessary for their use, or whether the reduction of the dry season flow of any stream will be caused to an amount likely to produce unsanitary conditions, or otherwise unduly injure public or private interests." And it was also declared that the approval of the commission shall constitute the state's assent to the diversion of water and the construction and operation of

water works. In 1910 (*Pamph. L., p.* 551) the commission was given the same jurisdiction and supervision "over well, sub-surface, or percolating water-supplies now or hereafter furnished to the inhabitants of any municipal corporations as it now has over surface municipal water-supplies so furnished."

This statute, in our opinion, does not confine the power of the State Water Supply Commission to the approval or non-approval of the physical character of the construction proposed, for it is expressly charged with a general supervision over all sources of potable water-supply to the end that it may be economically and prudently developed for the use of the people of this state, and this supervision includes the determination of whether the plans proposed, which includes the source of supply, are justified by public necessity, and whether such proposed diversion of the quantity necessary for the applicant's use will interfere unduly with the obtaining of water by other municipalities, and also whether the amount taken will so affect the flow of any stream as to be likely to produce unsanitary conditions or otherwise unduly injure public or private interests. All of this requires more than the approval of the physical structure, and we think that it commits to this commission the power to say whether in a given case the supply of water to be taken is likely, among other things, to interfere unduly with the opportunity of other municipalities to obtain a water-supply, and whether what is proposed to be done is justified by public necessity or reasonably anticipated public use.

The power of the legislature to conserve the public waters of the state for the benefit of all the people of the state is not questioned, and if the legislature has committed to its agent, what, in the estimation of some of its citizens, appears to be an undue power, it can only be corrected by the legislature and not by the courts of the state, and finding as we do that the power to sanction and approve, or to withhold it, is committed to this commission, we cannot say that its action was illegal, if reasonable. Is it reasonable, is the remaining question.

On this point the appellant argues that as the water which is now supplied to the borough of Collingswood by contract with a private corporation is drawn from the public water-supply, such supply would not be diminished by granting this application, because, to the extent of the diversion from a new source, the present draft on the public water-supply would be relieved, and therefore there is no escape from the conclusion that the presence of the existing water plant was the only fact which led to the refusal of this application, and that the effect of the refusal is the protection of a monopoly. This is not a fair statement of the position of the commission, their determination being, that as the municipality was now being supplied with water in sufficient quantity, of good quality and at reasonable rates, there existed "no public necessity or reasonably anticipated public use" which required a new draft upon the public waters of the state, and this we think was the exercise of a discretion conferred by the legislature, for when a municipality proposes a draft upon a new source of water-supply, the commission have a right to consider the fact that the municipality is now being supplied from another source, in determining whether there is a "public necessity or reasonably anticipated public use" required to be supplied by tapping a new source of supply, and we cannot say that in determining that no such public necessity existed, the commission abused the discretion conferred upon them by the statute, or that such conclusion is without evidential support and therefore unreasonable.

It is further argued that the borough is a growing community increasing rapidly in population, and that its expansion would be stimulated if it was known that it owned its own municipal water-supply plant. This argument does not affect the question of the reasonableness of the determination of the commission. It bears upon the promotion of the growth of the city rather than in support of the claim that there is a public necessity or a reasonably anticipated public use.

It is also urged that the suggestion contained in the opinion of the Supreme Court that the private corporation now furnishes water which does not come from the public water-supply was not correct, because the supply furnished by the private corporation to appellant is provided by the Merchantville Water Company, which derives its supply from the public water sources of the state. But assuming that to be so, the judgment of the Supreme Court was not put upon that ground. It was simply an argument in answer to a proposition advanced by the appellant, and not necessary to the determination of the cause.

We are of opinion that the commission is given by the statute the power to refuse a municipality the right to divert water from a new source of supply, if there exists no public necessity or reasonably anticipated public use therefor, and where as in this case the Supreme Court has determined as a question of fact that such determination was reasonable, the conclusion of the Supreme Court will not be reviewed, if there was any evidence justifying the finding by the Supreme Court. *Sisters of Charity* v. *Cory,* 44 *Vroom* 699, 703. We think there was such evidence, and therefore the judgment of the Supreme Court is affirmed, with costs.

WHITE, J. (dissenting). In stating my reasons for voting to reverse the judgment of the Supreme Court in this case, I am authorized by Mr. Justice Garrison, who is prevented from being present, but who participated in the conference of this court on this case, to use the dissenting memorandum prepared and intended to be filed by him, which is as follows:

"The power of this court at this time to review the action of the respondent is conferred by the statute that created that public agency which expressly provided that its action 'shall *at all times* be subject to review by the *courts* for reasonableness, legality and form,' not at one˘ time by *a court,* but by 'the courts' 'at all times.'

"The action thus brought under review in my opinion lacks legality because it is founded upon a misconception by the commission of the scope of its statutory powers based upon

a misconstruction of the statute which confers and circum-scribes such powers, and it lacks reasonableness because the sole reason on which it is founded, viz., the existing relation of vendor and vendee between a private vendor of water and the municipality, establishes the unreasonable doctrine that a municipality that is buying its water will because of that fact be denied the right to have water works of its own. This necessarily results in a monopoly that is perpetual at the will of the private purveyor of water, for there is a period in the history of every newly organized municipality when it is too sparse in population and too weak financially to have water works of its own and hence must in the performance of its governmental duty become a purchaser of water, which municipal act is, by the interpretation placed by the com-mission upon its power and by the construction placed upon the statute by the court below, a plenary reason for denying to such municipality when it has grown larger and stronger, the right to perform for itself the governmental function in question.

"That the existing relation between the borough and such private vendor of water is in the present case the sole de-termining factor is perfectly apparent both from the report of the commission and the opinion of the court below.

"In my judgment the question whether the borough should continue to buy its water was one of legislative policy to be determined by the municipality whose action was not subject to review or reversal by the State Water Supply Commission under a proper construction of its statutory powers, and that in overriding such municipal action the commission exercised powers that were *ultra vires* such state agency and which neither the Supreme Court nor this court would venture to assert under like circumstances.

"The great importance of keeping the several state agencies or commissions, which are rapidly growing in number, within the sphere of their proper activity, coupled with the establishment of a monopoly and the peculiarly obnoxious interference with home rule that result from the doctrine established in the present case justifies this brief statement

of the grounds upon which I vote for the reversal of the judgment entered in the court below."

Further amplifying upon the reasons expressed in this view of Mr. Justice Garrison, in which I heartily concur, I think the action of the State Water Supply Commission in this case particularly obnoxious from a practical as well as from a legal standpoint. If this state agency is to be permitted to decide that because, *and only because,* the business of a private water company now supplying the territory in question, would otherwise be impaired, the people are to be deprived of their natural right to take for themselves the water with which nature has supplied them in their own territory, then not only the state constitution's prohibition against special laws granting exclusive privileges to corporations, but also the vast power of present unanimous public opinion antagonistic to monopolies in public utilities, will have become a farce. All that will be necessary will be for a political boss of sufficiently large power, owning a water corporation, to procure the appointment of a complaisant water-supply commission of friends or relatives, in order to create his company, chartered and intended to serve the people, into a monopoly to oppress them. I think it a particularly dangerous doctrine which will vest such a power as this in any commission, and I do not think the legislature has so vested it here. What the legislature has done, and what only in my judgment it could do, is to vest in this commission the right to prevent one community from taking more water than its reasonable necessities require it to take, where to do so would deprive some other community of a supply sufficient for its reasonable necessities. Under such circumstances it may well be that one community, which is reasonably supplied from one supply, will be prevented from tapping another supply, *where it appears* that to do so would deprive some other community of its necessary supply. Such reasonable conservation of the public supply for all so that all may partake of it is within the state's police power, and is consequently valid. But where, as here, the only deprivation to result from the taking is of profits of a corporation

for private profit, I cannot think any ground has been laid for the commission's action. Our constitution prohibits the taking away of private property for public profit without compensation. The reason that it did not make a similar prohibition as to the taking away of public rights from the public for private profit, was doubtless because it was never intended that it should be done. And yet in this case this commission has said that the public of Collingswood shall not be permitted to exercise their natural right to take for themselves water for their necessary consumption from their own territory, where it *does not appear* that to do so will deprive any other citizens of the state of their full water-supply, because to do so will affect the private profits of a water company whose charter does not and could not pretend to give it any exclusive or monopolistic rights.

I think the judgment should be reversed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, BERGEN, KALISCH, BOGERT, VREDENBURGH, CONGDON, HEPPENHEIMER, JJ.   9.

*For reversal*—WHITE, J.   1.