ANTON NELSON, PROSECUTOR, v. TOWN OF KEARNY ET AL., DEFENDANTS.

Argued October 7, 1925—Decided February 18, 1916—Filed March 2, 1926.

Municipalities—Water Contracts Between Municipalities and North Jersey District Water Supply Commission—Such Contracts Are Not as Those Between Private Citizens—Municipalities Must Rely Upon Reports of Their Competent Engineers—The Several Reasons for Setting Aside Contract and Review of Ordinance Considered and Found to be Without Sufficient Merit.

On rule to show cause why a writ of *certiorari* should not be allowed.

Before Justices TRENCHARD, KATZENBACH and LLOYD.

For the prosecutor, *Robert H. McCarter.*

For the defendants, *Spaulding Frazer.*

PER CURIAM.

This case is before us on an order to show cause why a writ of *certiorari* should not issue to review an ordinance of the town of Kearny, passed by the town council June 24th, 1925, authorizing the execution of a contract between the city of Newark, the North Jersey district water supply commission, and the town of Kearny, to provide the latter with a water supply. The contract is an important one, involving a construction cost of $2,689,421, and a further sum of

$110,000, for incidental costs and expenses in connection therewith. The contract is one authorized under chapter 71 of the laws of 1916.

The applicant for the writ is Anton Nelson, a property owner and taxpayer of the town of Kearny. In lieu of affidavits taken under a rule it was agreed at the argument that the affidavit of Cornelius C. Vermeule, a hydraulic engineer, offered by the prosecutor, should be received and used, and that the affidavits of Mr. Arthur H. Pratt, a hydraulic, municipal and sanitary engineer, and the affidavit of Mr. Berkeley W. Moore, chairman of the north district water supply commission, offered by the defendants, should likewise be received and used.

The prosecutor contends, first, that neither the water supply commission nor the city of Newark agree in the contract that Kearny shall receive twelve million gallons of water per day, although by the fifth section of the contract Kearny agrees to take twelve million gallons as a minimum amount. We will consider this point with the sixth point made by the prosecutor, which is that the contract presupposes that the supply of water in the Wanaque shed, from which the water is to be taken, will be sufficient to afford a supply of one hundred million gallons a day. The contract provides in the fourth section thereof that the amount of waters to which Kearny shall be entitled shall not be decreased below twelve per cent. of the total supply of water system when completed. The total supply is based upon an estimate of one hundred million gallons per day. The wording of the contract, taken in connection with the provisions of chapter 71 of the laws of 1916, seems to us to establish a contractual relationship by which Kearny is to receive twelve million gallons of water per day, provided the Wanaque shed is capable of producing such an amount. The affidavit of Mr. Vermeule, offered by the prosecutor, is to the effect that the Wanaque shed is incapable of developing a supply of one hundred million gallons per day, which is necessary in order to supply Kearny with twelve million gallons per day. Mr. Pratt, the hydraulic

engineer for the commission, contends in his affidavit that Mr. Vermeule's opinion is based upon old data, collected many years ago by him, which is now obsolete and incorrect; that new data, calculations and computations fix the estimated yield for the use of the municipalities, parties to the Wanaque contract, at one hundred million gallons per day. In matters of this kind a municipality must necessarily select an engineer in whom it has confidence. If the engineer so selected renders, after a careful examination, an opinion with reference to the amount of water that can be derived from a water shed, the governing body of the municipality has the right to rely upon such an opinion and to enter into a contract based upon such an opinion. If one opposed to the making of the contract employs an engineer who gives an opinion different from that which the engineer of the municipality gives, this affords no basis for a court to stay the hand of the municipality in the making of a contract which it, in the exercise of a reasonable discretion, sees fit to make. If a proposed contract can be side tracked by the mere production of a different opinion from an engineer other than the engineer engaged by the municipality, no public work, no matter of what importance to the municipality, could be undertaken. We are of the opinion that the opinion testified to by Mr. Vermeule as to the amount of water to be derived from the Wanaque shed affords no sufficient reason for permitting a review of the proposed undertaking.

The second point made in behalf of the prosecutor is that while the purview of the contract and the terms of the ordinance presuppose an obligation on the part of the commission to construct the necessary works to the distribution system of Kearny, the contract itself only requires that such works be constructed to the Belleville reservoir in the city of Newark.

The contract is for the development of a water supply and the furnishing of potable water to the city of Newark and the town of Kearny. The purpose of the contract, not only as set forth in the contract itself, but in the statute from which the power to make the same is derived, contemplates in our opinion

the construction of such necessary works as to connect the supply of water with the distribution system of Kearny. This contract is not to be construed as if it were between the town of Kearny and a private corporation or an individual. The contract is but one element in a general scheme of co-operation between the municipalities undertaking to secure a water supply, aided by the water supply commission, an agency of the state designed to facilitate the acquisition of a water supply for municipalities. There are many provisions in the statute itself which protect the rights of the municipalities entering into the scheme. Taking these matters into consideration we feel that the point made by the prosecutor in this regard is not well taken.

The third contention made by the prosecutor is that the ordinance authorizing the contract mistakingly recites both in its title and in its body the fact that the money appropriated, and for which a bond issue is authorized, will cover the expenses of operation of the plant, as well as the construction thereof. It is true that the ordinance authorizes the execution of a contract for the construction, acquisition and operation of a water supply. The contention, as we understand it, is that the ordinance provides for the execution of a contract for the operation of a water supply as well as for the construction and acquisition thereof, and that the contract itself does not provide for the continued operation of the plant. We do not construe the word "operation" in the title of the ordinance to mean the perpetual operation of the plant, for the reason that the perpetual operation of the plant is provided for in the fifteenth section of the agreement. We deem the word mere surplusage, and in view of the provision made for the perpetual operation we do not see that the use of the word in the title of the ordinance affords any basis for setting the same aside.

The fourth ground of attack is that the contract permits a departure, in whole or in part, from the plans and specifications. It is insisted that the whole purview of the act requires the contract to be in its final form when signed,

and is opposed to the ideas that such contract can be departed from. The work contemplated by the contract is of great magnitude. It must necessarily happen that in the prosecution of such work unforeseen contingencies will arise. These will require alterations in the maps, plans and specifications. Such alterations require a departure from the original maps, plans and specifications. All that the section of the contract attacked does is to give to the contract the necessary elasticity to meet such conditions. We cannot see how such a provision raises a question as to the validity of the contract. Such clauses are quite customary.

The fifth point advanced is with reference to the appropriation by the ordinance of $110,000 to cover incidental costs and expenses. There are incidental expenses attached to every contract of this character. They must be met. We think such a provision is not illegal.

This completes the consideration of all the points made in behalf of the applicant for the writ of *certiorari*. We have reached the conclusion that no one of them raises an arguable question of sufficient merit to warrant the allowance of a writ of *certiorari*. In a case where the allowance of a writ would, perhaps, suspend for a considerable period of time the prosecution of a great public work of prime necessity to a large number of persons, the discretion lodged in this court in the matter of the allowance of a prerogative writ should be sparingly exercised.

The rule to show cause is accordingly denied.