131 N.J. Super. 38 (1974)
328 A.2d 246
SERVICE ARMAMENT CO., A NEW JERSEY CORPORATION; NRA MEMBERS FOR A BETTER NRA, INC., A NEW JERSEY CORPORATION; HOWARD RAYMOND: GOODMANSHAW, INC., A NEW JERSEY CORPORATION; RUTGERS GUN AND BOAT CENTER, INC., A NEW JERSEY CORPORATION; NESHANIC DEPOT ANTIQUES, INCORPORATED, A NEW JERSEY CORPORATION; HOMESTEADER'S BLACK POWDER GUN CLUB OF BOUND BROOK, NEW JERSEY, AN UNINCORPORATED ASSOCIATION, PLAINTIFFS-RESPONDENTS,
v.
WILLIAM F. HYLAND, ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1974.
Decided November 11, 1974.
*40 Before Judges CONFORD, MICHELS and MORGAN.
Mr. David S. Baime, Deputy Attorney General, argued the cause for appellant (Mr. William F. Hyland, Attorney General of New Jersey, attorney pro se; Mr. Carl W. Swanson, Jr., Deputy Attorney General, of counsel and on the brief).
*41 Mr. Charles J. Irwin argued the cause for respondents (Messrs. Irwin & Post, attorneys; Mr. Charles A. Rosen, on the brief).
The opinion of the court was delivered by MICHELS, J.A.D.
This appeal raises the novel issue of whether replicas of antique muzzle-loading black powder pistols, revolvers and rifles which do not fire fixed ammunition are exempt from the provisions of the New Jersey Gun Control Law (L. 1966, c. 60; N.J.S.A. 2A:151-1 et seq.). Plaintiffs, four New Jersey corporations engaged in the sale of replicas of Civil and Revolutionary War muzzle-loading black powder firearms, a New Jersey sportsmen's organization of over 300 members, an individual collector of antique firearms from the Revolutionary War period, including replicas thereof, and an unincorporated association of approximately 15 collectors and shooters of Civil War muzzle-loading firearms, instituted this declaratory judgment suit, naming the Attorney General of New Jersey as a defendant and seeking (1) a declaration that replicas of antique muzzle-loading black powder pistols, revolvers and rifles which do not fire fixed ammunition are exempt from the provision of the Gun Control Law by virtue of N.J.S.A. 2A:151-18 (L. 1966, c. 60, § 15), and (2) an injunction against enforcement of the criminal sanctions of the Gun Control Law based upon the Attorney General's recent interpretation that replicas of antique firearms were not exempt from the law.
In the Law Division Judge Schoch interpreted the exemption for antique and ornamental firearms created by N.J.S.A. 2A:151-18 to include replicas of antique firearms, as well as antique firearms themselves, regardless of the date of their manufacture, and entered summary judgment for plaintiffs. The Attorney General appeals, contending that it was not the Legislature's intention to exempt operable replicas of antique firearms from the regulatory provisions *42 of the Gun Control Law. He argues that the court below (1) incorrectly placed inordinate weight on the prior administrative interpretation of the statute and enforcement of same with respect to replicas of antique firearms, and (2) improperly derived a legislative intent to exempt replicas from the failure of the Legislature to act in response to such administrative interpretation. We stayed the judgment below pending appeal, which stay was continued by the Supreme Court, thereby continuing the enforcement of the Gun Control Law based upon the Attorney General's recent interpretation of the exemption set forth in his memorandum of July 18, 1973 to the county prosecutors and New Jersey State Police.
A brief review of the context in which the issue arises is helpful to its resolution. The New Jersey Legislature enacted a comprehensive "Gun Control Law" in 1966 (L. 1966, c. 60; N.J.S.A. 2A:151-1 et seq.), the constitutionality of which was upheld by our Supreme Court in Burton v. Sills, 53 N.J. 86 (1968), app. dism. 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969). The 1966 act, which repealed and amended sections of the existing statutory provisions regulating firearms, provided for, among other things, the licensing of manufacturers and wholesale and retail dealers of firearms, and established permit and identification requirements for the acquisition of firearms. The regulatory provisions of the act were "designed to prevent criminal and other unfit elements from acquiring firearms." Burton v. Sills, supra at 93. The Legislature, however, created an exemption from the regulatory provisions of the act for certain firearms. N.J.S.A. 2A:151-18 provides:
This chapter does not apply to antique firearms which are incapable of being fired or discharged or which do not fire fixed ammunition, or those manufactured before 1898 for which cartridge ammunition is not commercially available, and are possessed as curiosities or ornaments or for their historical significance or value.
*43 Shortly before the Gun Control Law came into effect[1] a special meeting was called in Trenton for the purpose of informing firearms dealers and others involved with firearms in New Jersey of the full implications of the act. On behalf and with the knowledge of then Attorney General Arthur J. Sills the dealers were advised that replicas of muzzle-loading black powder pistols, revolvers and rifles were exempt from the provisions of the Gun Control Law. Attorney General Sills, in an affidavit submitted to the Supreme Court (on the motion for a stay), specifically stated:
3. I was closely involved in the drafting and presentation of the aforesaid Gun Control Act and participated in numerous discussions concerning the intent and enforcement of the Act both before and after its implementation.

* * * *
5. * * * It was my opinion during the term of my administration that said replicas were exempt from the Act and were intended to be exempt from the Act by the draftsmen and legislators. Therefore, the Gun Control Act of 1966 was always enforced during my administration with my knowledge and direction to exempt such replicas.
The construction placed upon the "antique firearm" exemption by then Attorney General Sills was consistently and uniformly followed, and the statute enforced in the light of such construction for the next seven years, including the period from 1970 until July 18, 1973, during which George F. Kugler, Jr., was Attorney General of New Jersey. This is not disputed by the present Attorney General. In fact, he admits that "[t]he policy of exemption with respect to replicas was acknowledged in November, 1972, when the Division of Criminal Justice submitted a Report on the Proposed New Jersey Penal Code * * * to the New Jersey Criminal Law Revision Commission." The Report in pertinent part provides:
*44 The Code continues the present exemption for antique firearms, Section 2C:39-6c. Recently, firearms, intended to duplicate antique weapons and capable of being fired, have been manufactured. The provision permits persons to carry such firearms. They do not fire fixed ammunition and consequently are exempted under the section but they are still lethal weapons which should not be carried by persons either in their automobiles or on their person, especially when loaded.
It is also undisputed that the Legislature did not interfere with the uniform construction and enforcement of the Gun Control Law to exempt from its application replicas of muzzle-loading black powder antique firearms during this entire seven-year period.[2]
On July 18, 1973 then Attorney General Kugler, in response to an inquiry from the Bergen County Prosecutor, advised all county prosecutors and the State Police that the earlier opinion of the Attorney General's Office concerning the application of the "antique firearms" exemption to replicas was incorrect and that replicas of antique firearms were not exempt from the licensing provisions of the Gun Control Law. Thereafter, on August 15, 1973 the Superintendent of the Division of State Police individually notified firearms dealers in New Jersey, including plaintiffs, that only persons with either a firearms dealer's license, a valid New Jersey Firearms Purchaser Identification Card (in the case of long guns), or a Permit to Purchase a Pistol or Revolver may purchase or receive a replica of an antique firearm in New Jersey. In addition, the dealers were notified that they are required to record in the Federal and State Firearms *45 Ledger all replicas of antique firearms presently in stock and all future deliveries of such replicas, and to complete a certificate of eligibility for each long gun and a registration form for each hand gun transferred.
The firearms which are involved in this action are replicas of antique muzzle-loading black powder pistols, revolvers and rifles of the Revolutionary and Civil War periods. They fire a solid projectile or metal ball or bullet by the action of black powder ignited by a spark from a flintlock, matchlock or other similar ignition device; they do not fire fixed or cartridge ammunition. These replicas, like the operable "genuine" or "authentic" antique firearms which are sought to be copied or duplicated, are "firearms" within the meaning of the Gun Control Law of 1966 (see N.J.S.A. 2A:151-1 (a)) and would be subject to the regulatory provisions thereof unless exempted or excluded from said provisions by the "antique firearms" exemption set forth in N.J.S.A. 2A:151-18.
N.J.S.A. 2A:151-18 exempts three categories of antique firearms from the application and operation of the Gun Control Law of 1966: those which (1) "are incapable of being fired or discharged," (2) "do not fire fixed ammunition," and (3) were "manufactured before 1898 for which cartridge ammunition is not commercially available." The replicas with which we are concerned do not fire fixed ammunition. However, they are operable, that is, capable of being fired or discharged. Obviously, their exempt status, assuming "antique" comprehends a replica of an antique, depends upon a finding that they are within the scope of the second category, i.e., antique firearms which do not fire fixed ammunition.
The Gun Control Law did not contain a definition of the term "antique firearms," and we are unable to glean a definition from the limited legislative history of the act.[3] Thus, *46 we look to the accepted principles of statutory construction to determine whether replicas of antique firearms are within the scope and meaning of the term "antique firearms" contained in N.J.S.A. 2A:151-18. Our object is to ascertain the legislative intent.
It is a cardinal principle of statutory construction that in the absence of an explicit indication of a special meaning, the words of a statute are to be given their ordinary and well understood meaning. Fahey v. Jersey City, 52 N.J. 103, 107 (1968); Safeway Trails, Inc. v. Furman, 41 N.J. 467, 478 (1964), cert. den. 379 U.S. 14, 85 S.Ct. 144, 13 L.Ed.2d 84 (1964); Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 526 (1964). See also, N.J.S.A. 1:1-1. Webster's Third New International Dictionary (Unabridged 1971), at 96, defines the word "antique" as an adjective as follows:
1: existing since ancient or former times: among the oldest of its class. * * * 2: of or belonging to earlier periods: ANCIENT. * * * 3: exhibiting the style or fashion of ancient or former times: OLD-FASHIONED, ARCHAIC. * * * 5: * * * b: having the appearance of age: suggesting the crafts of an older period. * * *
and as a noun as:
1 a: a relic or object of ancient times or of an earlier period than the present b: a work of art, piece of furniture, or decorative object made at a much earlier period than the present and according to U.S. customs laws at least 100 years old. * * *
When the term "antique" is used to modify a noun such as the noun "firearm," it may be used to denote that which has existed since early or former times, thereby creating a classification of firearms having a distinct characteristic of age, as argued here by the Attorney General. However, as the dictionary indicates, "antique" may also be used to *47 denote that which exhibits the style or fashion of ancient or former times, or gives the appearance of age or of a craft of an older period, as argued by plaintiffs. It is not uncommon to refer to replicas, reproductions or copies of so-called genuine or authentic antique articles by the generic term "antique," even though such articles are not actually aged. The different connotations of the word "antique" therefore create a colorable basis from which to conclude that as an adjective it is ambiguous as used in N.J.S.A. 2A:151-18.
Moreover, that portion of N.J.S.A. 2A:151-18 which exempts antique firearms manufactured before 1898 for which cartridge ammunition is not commercially available accentuates the ambiguity inherent in the term "antique firearms," and suggests that the Legislature contemplated the possibility that the term "antique firearms" could include firearms manufactured after 1898, as well as before, and provided that those manufactured after 1898 would be exempt if they did not fire fixed ammunition. There is no indication in the statute as to how much later than 1898 a firearm could be manufactured and still fall within the exemption as thus understood. It is therefore possible to reason with some degree of persuasiveness that a firearm could have been manufactured relatively recently and still be within the actually intended purview of the exemption. The Colt Patent Firearms Manufacturing Company, for example, is presently manufacturing and offering for sale the "1851 Navy" revolver, a black powder muzzle-loading firearm which does not use fixed ammunition. These firearms were manufactured from 1851 until 1873, when their manufacture was discontinued. In 1970 Colt resumed production, using the 1851 blueprints. The present model is identical to the prior production models. The "1851 Navy" revolvers manufactured between 1851 and 1873 would certainly qualify as "antique firearms" within the statutory exemption, and there is a sound basis to infer that the identical revolvers presently *48 being manufactured by Colt were intended to be exempt as well.
The term "antique firearms", as shown above, is sufficiently ambiguous to justify the trial judge's reliance upon the contemporaneous construction and actual enforcement of the statutory exemption by the Attorney General. It is clear that the contemporaneous and practical construction of a statute over a period of years by the agency charged with its enforcement without interference by the Legislature in the interim is evidence of its conformity with the legislative intent and may be given substantial weight by the court. In Pringle v. Department of Civil Service, 45 N.J. 329 (1965), our Supreme Court held:
* * * The principle is well established that resort may be had to long usage, contemporaneous construction and practical interpretation in construing statutes, to ascertain the meaning of technical terms, to confirm a construction deduced from the language, to explain a doubtful phrase or to ascertain the meaning of a phrase if obscurely expressed. * * * [at 332-333]
Similarly, in Jersey City Housing Authority v. Department of Civil Service, 87 N.J. Super. 146 (1965), the Appellate Division stated:
It has been the practice of the Department to certify employees from a municipal re-employment list to a municipal housing authority. This practical construction of the statute by the Department over a period of years without interference by the Legislature is evidence of its conformity with the legislative intent and strongly inclines the courts to concurrence therein. [at 149]
In Offhouse v. State Board of Education, 131 N.J.L. 391 (1944), app. dism. 323 U.S. 667, 65 S.Ct. 68, 89 L.Ed. 542 (1944), reh. den. 323 U.S. 814, 65 S.Ct. 114, 89 L.Ed. 648 (1944), our former Supreme Court commented:
Contemporary exposition may be considered, and is ordinarily accorded great weight, where the language of a municipal regulation is of doubtful import and is not made plain by the context. The meaning attributed to the rule soon after its adoption by the authority *49 charged with its enforcement is generally the best construction; and it will be accepted unless clearly wrong, especially where it has received the acquiescence of those affected by its terms. [at 395]
See also, Automatic Merchandising Council v. Glaser, 127 N.J. Super. 413, 420 (App. Div. 1974); Walsh v. Department of Civil Service, 32 N.J. Super. 39, 48 (App. Div. 1954); State v. Clark, 15 N.J. 334, 341 (1954), and 2A Sutherland, Statutory Construction (4 ed. 1973), § 49 at 228 et seq.
The Attorney General does not dispute the existence of this principle of statutory construction, or the fact that for the seven-year period, from the enactment of the Gun Control Law in 1966 until July 1973, the act was interpreted and enforced by the Attorney General's Office (both Attorneys General Sills and Kugler) to exempt from its application replicas of antique muzzle-loading black powder firearms. The Attorney General argues, however, that this principle is inapplicable here because (1) the Attorney General's prior interpretation was neither reduced to writing nor the product of an adversary proceeding and was plainly wrong, and (2) an inference that the Legislature intended to exempt replicas cannot be drawn from its failure to enact the Senate and Assembly bills referred to above, or otherwise amend the exemption from the Gun Control Law.
We are satisfied that there is no requirement that an administrative interpretation of a statute must be in writing or the product of an adversary proceeding, for the court to give weight to such interpretation in construing the statute. While we agree with the Attorney General that the contemporaneous and long-standing construction of a statute by an administrative agency has no relevancy and should not be given any weight where the statute is not ambiguous and the interpretation conflicts with the court's view of the plain meaning of the language used and the statutory purpose (see Safeway Trails, Inc. v. Furman, supra 41 N.J. at 483; Kingsley v. Hawthorne Fabrics, Inc., supra 41 N.J. at 528; United *50 Stations v. Getty Oil Co., 102 N.J. Super. 459, 473 (Ch. Div. 1968), aff'd o.b. 54 N.J. 150 (1969)), such is not the situation here. As we have pointed out above, resort to the well recognized principle of statutory construction was clearly justified from the ambiguity in the term "antique firearms." The construction of the exemption by then Attorney General Sills contemporaneous with the passage of our Gun Control Law, and its continued uniform enforcement in the light of that construction for the next seven years, was not plainly wrong or unreasonable in the circumstances. There is a real question as to whether our Legislature intended to subject these replicas to the stringent regulatory and licensing provisions of the Gun Control Law. If they were to be subject to such control, their utility would be substantially diminished if not totally destroyed. These replicas, much like the genuine or authentic antique, are of limited value and usefulness as a functional firearm. If the few isolated instances in which replicas of antique firearms have been used in the commission of crime now require that such firearms be included within the purview and scope of the Gun Control Law, then that determination should be made by our Legislature. Furthermore, the interpretation of the exemption by then Attorney General Sills is consistent with the federal policy expressed in the National Firearms Act of 1954 (26 U.S.C.A. § 5841 et seq.) which was amended in 1968 to specifically exempt from its application "antique firearms" of "any matchlock, flintlock, percussion cap, or similar type of ignition system or replica thereof, whether actually manufactured before or after the year 1898." 26 U.S.C.A. § 5845 (g).
Finally, we agree with the Attorney General that no inference of legislative intent to exempt replicas from the Gun Control Law may be drawn by the failure of the Legislature to enact the two particular bills referred to above. The mere introduction of these two bills which would have limited the antique firearms exemption to firearms manufactured before 1898 is in no way conclusive in determining the legislative *51 intent with respect to the enactment of the 1966 Gun Control Law. See J.C. Chap. Prop. Owner's, etc., Ass'n v. City Council, 55 N.J. 86, 95 (1969); Fraser v. Robin Dee Day Camp, 44 N.J. 480 (1965). Thus, to that extent, the court below was incorrect in attaching significance to the failure of the Legislature to pass these two bills. However, the compelling factor is that the Legislature did not interfere with the construction placed upon the exemption by the Attorney General contemporaneously with its enactment and consistently followed for the next seven years by the law enforcement authorities until changed by then Attorney General Kugler in July 1973.
Accordingly, we hold that the "antique firearms" exemption created by N.J.S.A. 2A:151-18 exempts from the Gun Control Law of 1966 replicas of antique muzzle-loading black powder pistols, revolvers and rifles which do not fire fixed ammunition regardless of when manufactured. The summary judgment entered in favor of plaintiffs below therefore is affirmed.
NOTES
[1] The effective date of the Gun Control Law (L. 1966, c. 60), approved June 6, 1966, was 60 days after enactment.
[2] We note that two bills were introduced in the Legislature during this period: Senate No. 451 on April 10, 1969 and Assembly No. 1117 on May 14, 1970. Each bill proposed a new comprehensive scheme of firearms regulation, and each limited any exemption from its application to weapons which do not fire fixed ammunition and to early cartridge fire arms for which cartridge ammunition is not currently manufactured or commercially available, provided the weapons have been manufactured before 1898 and are possessed as curiosities or ornaments. These bills were never enacted into law, and to date N.J.S.A. 2A:151-18 stands as approved on June 6, 1966.
[3] The prior legislation regulating firearms did not contain an exemption similar to that enacted by the 1966 Gun Control Law. The 1927 "Supplement to an act entitled `An act for the punishment of crimes' (Revision of 1898)" merely excluded or exempted from its application "antique pistols unsuitable for use as firearms and possessed as curiosities or ornaments." (L. 1927, c. 321, § 18).