148 N.J. Super. 465 (1977)
372 A.2d 1147
AMERICAN NATIONAL BANK AND TRUST OF NEW JERSEY AND WILLIAM C. GABRIELSEN, EXECUTORS OF THE LAST WILL AND TESTAMENT OF HELEN A. GABRIELSEN, PLAINTIFFS-RESPONDENTS, CROSS-APPELLANTS,
v.
PRESBYTERIAN HOMES OF NEW JERSEY, DEFENDANT-APPELLANT, CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 9, 1977.
Decided March 14, 1977.
*467 Before Judges LORA, CRANE and MICHELS.
Mr. Arthur S. Lane argued the cause for appellant (Messrs. Smith, Stratton, Wise and Heher, attorneys; Ms. Ann Reichelderfer on the brief).
*468 Mr. James E. Davidson argued the cause for respondents (Messrs. Farrell, Curtis, Carlin, Davidson and Mahr, attorneys; Mr. Gerard E. Hanlon on the brief).
Mr. Stephen D. Berger, attorney for New Jersey Association of Non-Profit Homes for the Aging, submitted a brief amicus curiae.
The opinion of the court was delivered by LORA, P.J.A.D.
Plaintiffs, co-executors of the estate of Helen A. Gabrielsen, on September 25, 1974 filed a complaint against defendant seeking the return of the $33,000 capital fee paid by decedent when she became a resident of Meadow Lakes, a retirement community owned and operated by defendant, as well as other statutory remedies. The complaint alleged that defendant had violated the Retirement Community Full Disclosure Act, N.J.S.A. 45:22A-1 et seq., in that (1) on September 14, 1970, and for six months thereafter, defendant had not registered under the act, (2) had not delivered a current Public Offering Statement to decedent prior to or at the time she signed the Meadow Lakes Residence Agreement, and (3) had violated the act by failing to disclose in a Public Offering Statement filed some six months after decedent had paid defendant the $33,000 capital fee that the fee would not be refunded in the event of her death while a resident of Meadow Lakes.
Cross-motions for summary judgment bottomed upon affidavits, depositions and answers to interrogatories were heard and the trial judge granted summary judgment in favor of plaintiffs, who then moved for an award of attorneys' fees pursuant to the statute. Judgment was entered awarding plaintiffs $33,000 in damages, $10,708.33 in interest, counsel fees of $1,600 plus $238.65 in costs and disbursements, for a total of $45,546.98.
Defendant appeals, contending that the trial judge erred in finding that (1) plaintiffs had standing to bring the suit, thereby creating a windfall for the beneficiaries of decedent's *469 estate where both parties to a valid contract had enjoyed complete performance of its terms; (2) defendant is not exempt from the Retirement Community Full Disclosure Act; (3) defendant had not complied with the act; (4) plaintiffs were not estopped from bringing the action, (5) in granting plaintiffs the statutory remedy of rescission under N.J.S.A. 45:22A-16(b), and (6) in refusing to give his decision prospective application only. Plaintiffs cross-appeal from the trial judge's refusal to grant the requested amount of attorneys' fees.
Meadow Lakes is a total care retirement community which is one of four owned and operated by defendant Presbyterian Homes of New Jersey. The living arrangements and services provided are fully described in Presbyterian Homes v. Division of Tax Appeals, 55 N.J. 275 (1970).
Preliminarily, we note that aside from consideration of the Retirement Community Full Disclosure Act, the residence agreement or life-care contract is fully enforceable. See Bower v. The Estaugh, 146 N.J. Super. 116 (App. Div. 1977), and Riemenschneider v. Fritz Reuter Altenheim, 146 N.J. Super. 123 (App. Div. 1977).
Plaintiffs contend for the first time on appeal that defendant failed to clearly set forth in the offering statement delivered to Mrs. Gabrielsen that the capital fee would not be returned to her estate if she died after occupying the apartment, thereby omitting a material fact required to be stated in the prospectus or necessary to be stated in order to make the prospectus not misleading under N.J.S.A. 45:22A-16(a). In support of this contention plaintiffs assert that the prospectus only briefly refers to the residence agreement for the rights and obligations of the parties, information regarding disposition of the capital fee upon a resident's death being set forth in the residence agreement and which itself is misleading because the clause is grouped with several other provisions under the heading "Termination of this Agreement" and is not included under the heading *470 "Financial Arrangements." Plaintiffs also argue that their contention is further supported by the Recommended Form for Public Offering Statement found in Appendix A following N.J.A.C. 5:17-6.11, which lists in its Part IV, "refund privileges, if any."
Aside from the fact that this issue was not raised below and that there are no findings in the record with respect to any of said allegations, we see no merit in plaintiffs' claim. The prospectus did in fact refer to the residence agreement in which the "no refund" provision is clearly set forth. Nor is there any requirement in the statute or regulations that such clause appear in the prospectus, N.J.S.A. 45:22A-7; N.J.A.C. 5:17-4.8. Our examination of the residence agreement satisfies us that the disclosure in the Residence agreement is sufficient to prevent the prospectus from being misleading.
The primary issue for our determination is the applicability of the Retirement Community Full Disclosure Act to Meadow Lakes.
N.J.S.A. 45:22A-2(b) defines a retirement community as
* * * any complex or proposed complex of more than 10 units, whether contained in one or more buildings or whether constructed on separate lots, offered for sale or lease as part of a common promotional plan where such community is advertised or represented as a retirement community or as a community primarily for retirees or elderly persons, or where there is a minimum age limit tending to attract persons who are nearing retirement age; * * *.
Defendant asgues that the residence agreement evidences neither a sale nor a lease and that consequently the act is not applicable. Concededly, no sale is involved.
To distinguish its residence agreement from a conventional lease, defendant cites the many services provided at Meadow Lakes which are not present in a landlord-tenant relationship  e.g. medical care, maid service, linen and towel service, and meal service consisting of three meals a day in a *471 common dining hall. Defendant further asserts that decedent did not have the right to exclusive possession of the unit she occupied in that Meadow Lakes retained a key to her unit and in its discretion could have removed her to a hospital if she had become ill, with the right to reassign her to a comparable unit upon her discharge from the hospital. The agreement expressly disclaims transfer of any proprietary rights or interest to the resident. Johnson v. Kolibas, 75 N.J. Super. 56 (App. Div. 1962), certif. den. 38 N.J. 310 (1962).
Defendant also relies on the opinion of the Attorney General of New Jersey, issued in December 1973 and a construction of the act by the agency charged with its enforcement, that the Meadow Lakes Residence Agreement is not a lease and that the community is therefore not subject to the Act.
In addition, defendant argues that the Interstate Land Sales Act, 15 U.S.C.A. § 1701 et seq. which was the model for the act, is limited in scope to conventional real estate transactions. Finally, defendant notes that the definition of "unit" in the act was amended to include "a share or membership interest of a cooperative housing corporation or association which entitles the holder thereof to possess and occupy for dwelling purposes a house, apartment or other structure owned or leased by said corporation or association, or to lease or purchase a dwelling constructed or to be constructed by said corporation or association * * *." N.J.S.A. 45:22A-2(c) as amended by L. 1975, c. 335, § 1, eff. March 3, 1976. Since the Legislature failed to refer to the type of accommodations here involved when it so amended the act, defendant states that this is further evidence that the act was not intended to apply to communities like Meadow Lakes.
Plaintiffs counter that the intent of the parties and the nature of the transaction mandate a determination that the residence agreement constituted a lease. They assert that decedent's initial letter to defendant expressed her interest in moving from her present apartment into a "one-bedroom *472 apartment" at Meadow Lakes. Plaintiffs further note that the arrangement had many characteristics of a lease, such as the payment of a "monthly rate," which rate could be increased only upon 30 days' written notice to the resident. If payment of the "monthly rate" were not made within 30 days after receiving the monthly statement, Meadow Lakes could give written notice to the resident that if payment were not made within 15 days thereafter, it could terminate the agreement. Although the duration of the arrangement was unclear because it was intended to continue until death, plaintiffs state the relationship between decedent and Meadow Lakes was for a definite period of time, as evidenced by the interval of payments of the monthly rate and, citing Maier v. Champion, 97 N.J.L. 493, 495 (E. & A. 1922), they further aver that a month-to-month tenancy may be inferred from the monthly payment schedule.
It is further suggested by plaintiffs that most landlords retain keys to tenant premises and that restrictions in leases with respect to tenants' conduct are common. Plaintiffs contend decedent's apartment was legally in her exclusive possession; that she was not a roomer or lodger with a mere right to use the premises in exchange for her $33,000 capital fee and monthly charge of approximately $500 a month. Moreover, plaintiffs point to several places in the Meadow Lakes brochures where management refers to the living accommodations as apartments and to the rate schedule which states that the "Capital Fee is the consideration for a lifetime lease on the specified apartment, subject to the terms of the Residence Agreement."
Plaintiffs also refer to the determination in Presbyterian Homes v. Division of Tax Appeals, supra, that Meadow Lakes, although nonprofit, is not tax exempt since it is not run for charitable purposes, and that the operation of Meadow Lakes "is more related to the bargaining of the commercial market place," Id. 55 N.J. at 287, in support of their contention that the arrangement is nothing more than a lease. They additionally assert that the act, being remedial, *473 should be liberally construed and that restricting applicability of the act to narrow definitions of "sale" or "lease" would negate the purposes of the act and frustrate the public policy of the State. Referring to the definition of "disposition" in the act, which "includes sale, lease arrangement, award by lottery or any other transaction concerning a subdivision or community," N.J.S.A. 45:22A-2(k), plaintiffs contend that an arrangement such as the one at hand falls within the statutory scheme. Finally, plaintiffs argue that the Attorney General's opinion is contrary to the plain meaning of the act and is therefore entitled to little, if any, weight.
The trial judge, in holding that the residence agreement was a lease within the meaning of the act so that the act was applicable, stated that this view was supported by the relevant legislative history and that it would be "offensive to the intent and purpose of the statute to rely upon any doctrinaire concepts or common law concepts of what is or what is not a lease."
However, consideration of the statute as a whole leads us to conclude that the Legislature had a conventional "sale or lease" of property in mind when it enacted this legislation and that it is for the Legislature to extend the scope of the act's coverage to arrangements such as the Meadow Lakes residence agreement if it sees fit to do so.
In reaching this conclusion, we are first mindful that the residence agreement does not contain the language normally found in a lease. Thiokol Chem. Corp. v. Morris County Bd. of Tax., 41 N.J. 405, 416 (1964). The contract is not of definite duration. Thiokol, supra at 416. Although plaintiffs contend that a month-to-month tenancy may be inferred from the payment of the "monthly rate," we are of the view that such an inference is not justified under the circumstances of this case. Furthermore, either party may terminate the arrangement at will. Thus, the arrangement has the characteristics of a license or similar limited status  not a lease. Thiokol, supra at 417. Then, too, the estate of the occupant obtains no property rights arising out of the contract, such *474 as the right to possess the apartment or to receive the benefit of any of the services which are provided. No person other than the resident may occupy the accommodations covered by the agreement, except with the approval of the defendant. We do not believe that a different result is mandated by the fact that certain of the Meadow Lakes papers refer to the units as apartments and, in one instance, to the contract, as a lease. A reading of the residence agreement in its entirety dispels any conception of a leasehold interest.
We are of the further view that the Legislature did not intend, by this act at least, to regulate life care contracts which have been upheld in New Jersey for many years. See Fidelity Union Trust Co. v. Reeves, 96 N.J. Eq. 490 (Ch. Ct. 1924), aff'd 98 N.J. Eq. 412 (E. & A. 1924).
The statement of purpose attached to the legislation provides:
The purpose of this legislation is to require full and fair disclosure of the nature of interests in real estate subdivisions which are sold as retirement subdivisions or communities within New Jersey. As such, it is intended to prevent deceptive and fraudulent advertising to a sector of the population which has become most susceptible to such practices during the last few years. The legislation provides for the disclosure of all information concerning the subdivider and the physical characteristics of the development, information concerning the legal status of the subdivided property, statements concerning the condition of title including encumbrances, and appropriate financial information, as well as, the brochures, or "public offering statements" which are to be used for promotional or advertising purposes. This disclosure shall be submitted to the Division of Housing and Urban Renewal within the State Department of Community Affairs. After appropriate review by the division a registration will be issued permitting the subdivider to continue with his promotional activities. Both civil and criminal penalties are provided if any of the statements submitted to the division are purposely erroneous and the division has the power to revoke any senior citizens' subdivider's registration, if a violation has been found after appropriate examination and review.
This act will complement the Interstate Land Sales Full Disclosure Act recently adopted by Congress (Sec. 1400 [1401] et seq. of P.L. 90-44 [90-448]). This Federal legislation provides for full disclosure of interests in real estate subdivisions, not restricted to those sold to senior citizens or people in retirement, promoted, advertised *475 or sold through the mails or in Interstate Commerce. This law is also similar to full disclosure acts covering most subdivisions (again, not restricted to sales to senior citizens), passed in a number of jurisdictions including California (Cal. Bus. & Prof. Code, Secs. 11000-11023); Arizona (Ariz. Rev. Stat., Secs. 32-2181 to 32-2185); Florida (Fla. Stat. Ann., Secs. 475.47-475.55); and New Mexico (New Mex. Stats. Ann., Secs. 70-3-1 to 70-3-9).
As the act's statement of legislative purpose indicates, the act was inspired by and as a complement to the Interstate Land Sales Full Disclosure Act (15 U.S.C.A. § 1701 et seq.), which comprehends only conventional land subdivisions and conventional leasehold developments. Moreover, the statement of purpose, the act itself (N.J.S.A. 45:22A-6, 7) and the regulations (N.J.A.C. 5:17-1.1 et seq. and Appendix A  "Recommended Form of Public Offering Statement") are all geared to the conventional apartment lease and subdivision lot sale and not at all to the unique features of lifetime care contracts of the type here involved.
Parenthetically, we note that our conclusion that decedent's agreement with defendant is not within the comprehension of the act is in accordance with the decision of its administering agency, the Division of Housing and Urban Renewal of the Department of Community Affairs and the opinion of the Attorney General that the residence agreements used at Meadow Lakes do not involve any "sale or lease" within the terms of the act and hence the act does not apply to such a community. Such administrative construction of legislation, while not binding, is entitled to weight in judicial determination of the statute's meaning and intent where the statute is ambiguous. Service Armament Co. v. Hyland, 131 N.J. Super. 38, 48-51 (App. Div. 1974), rev'd on other grounds 70 N.J. 550, 561-562 (1976).
Notwithstanding our determination that defendant is exempt from the provisions of the Retirement Full Disclosure Act, our review of the record establishes that defendant nevertheless did in fact comply with the provisions of the act and the regulations promulgated to effectuate its purposes.
*476 It is plaintiff's position that the regulations which permitted Meadow Lakes to operate under a temporary exemption had the effect of postponing the effective date of the act and were therefore beyond the scope of the agency's authority and void; accordingly, defendant's failure to file its public offering statement prior to decedent's signing her agreement was a violation of the registration provisions of the act for which defendant is liable. Alternatively, plaintiffs argue that defendant failed to comply with those regulations in that it did not provide decedent with written notice that the public offering statement was being prepared and that it would be distributed to her when it was completed. N.J.A.C. 5:17-1.6. We disagree.
N.J.S.A. 45:22A-11(e) (2) permits the agency to "Grant exemptions if allowed by rules promulgated under subsection (a)," which subsection provides in part that the agency "shall adopt, amend or repeal such rules and regulations as are reasonably necessary for the enforcement of the provisions of this Act, * * * and other rules as are necessary and proper to effect the purpose of this Act."
The act went into effect on June 1, 1970, 180 days after its enactment on December 2, 1969. Rather than forcing all institutions that might be subject to the act to close down from that date until they could prepare a prospectus, the agency authorized temporary exemptions pursuant to its statutory power to do so. In order to qualify for such an exemption, however, the institution would have to apply to the agency. Thus, contrary to plaintiffs' assertion that the agency postponed the effective date of the act, it conditioned the continuance of defendant's operation on its conforming with the initial steps in the registration process as set forth in the rules.
The record reveals that on May 7, 1970 decedent Helen Gabrielsen wrote to Meadow Lakes, expressing her interest in joining the Meadow Lakes community. She enclosed an application and sent a nonrefundable processing fee of $100, together with a refundable deposit of $1,000. The executive *477 director by letter dated May 12, 1970, acknowledged receipt of decedent's application and her check for $1,100.
On June 11, 1970 defendant sent a letter to the Director, Division of Housing and Urban Renewal, Department of Community Affairs, requesting advice with respect to the applicability of the act to its four homes. The Director responded in a letter dated June 12, 1970, stating that he believed that the act applied to the homes but that he would refer the question to the Attorney General for resolution. He further advised that defendant could apply for a letter of exemption under § 2.102 of the regulations promulgated to effectuate the purposes of the act, N.J.A.C. 5:17-2.3, or that defendant could apply for a temporary letter of exemption under § 1.102 of those same regulations. N.J.A.C. 5:17-1.3). In any case, the Director advised that an application for an exemption was "without prejudice to the position that the law does not apply."
On June 18, 1970 defendant applied for a temporary letter of exemption pursuant to § 1.102 of the regulations and, in a letter bearing that same date, was advised that it was exempt from the provisions of the act until August 1, 1970. This temporary exemption was issued pursuant to Section 1.103 of the regulations, N.J.A.C. 5:17-1.4, which provides that
A Temporary Letter of Exemption shall be issued by the Division within two business days of receipt of an application therefor, unless the Director shall determine that such developer intends to mislead or defraud purchasers. Such Temporary Letter of Exemption shall exempt such developer, and such subdivision or community, from the provisions of the Act and of this Chapter from June 1, 1970 until August 1, 1970, unless extended by the Division; however, such letter may be revoked at any time by the Director for the protection of purchasers upon 24 hours' notice to the developer.
The letter also notified defendant that it was still responsible for compliance with the substantive provisions contained in §§ 1.102-1.105 of the regulations. N.J.A.C. 5:17-1.3-1.6.
*478 On July 20, 1970 defendant was informed that the Attorney General was of the opinion that Meadow Lakes was not exempt from the Retirement Community Full Disclosure Act. On July 23, 1970 defendant requested that the time for filing the application for registration for Meadow Lakes be extended until September 30, 1970. This extension was granted, as authorized by § 1.103 of the regulations, N.J.A.C. 5:17-1.4, in a letter dated July 28, 1970.
Mrs. Gabrielsen signed the Meadow Lakes residence agreement dated September 14, 1970, and tendered her check for the $31,900 remaining balance of the capital fee. She had not discussed the terms of the agreement with either her son, coexecutor-plaintiff, or her attorney prior to this time.
On September 30, 1970 defendant submitted a Statement for record for Meadow Lakes in accord with the Retirement Community Full Disclosure Act. Defendant received a notice of filing pursuant to § 2.201 of the regulations, N.J.A.C. 5:17-2.5, which, under § 1.104, N.J.A.C. 5:17-1.5, automatically extended the temporary letter of exemption until a notice of registration or order of rejection was issued. Decedent was orally informed at that time that a public offering statement was then being prepared and that defendant would deliver a copy to her when it was complete. This was in an attempt to comply with § 1.105 of the regulations, N.J.A.C. 5:17-1.6, which then provided:
(a) Any developer who has received a Temporary Letter of Exemption pursuant to this Subchapter shall deliver to each person who purchases a lot or unit in such subdivision or community on or after June 1, 1970, a notice informing him that a Public Offering Statement is being prepared in accordance with the Act and with this Chapter, and that a copy of such Public Offering Statement shall be provided to each such purchaser when it has been approved by the Division.
(b) Such developer shall deliver a copy of the approved Public Offering Statement to each such purchaser as soon as possible after approval thereof by the division.
(c) Such developer shall obtain and file a receipt for such Public Offering Statement as required by this Chapter.
*479 (d) Compliance with the provisions of this Section shall be deemed to comply with the requirements of the Act regarding the delivery of a Public Offering Statement to purchasers.
(e) Upon the registration of such subdivision or community by the Division, such developer shall be required to deliver a copy of the Public Offering Statement to all purchasers and prospective purchasers as required by Subchapter 4 (Public Offering Statement) of this Chapter.
On October 19, 1970 an executed copy of the residence agreement was sent to Mrs. Gabrielsen. On December 8, 1970 Mrs. Gabrielsen submitted a completed "Instruction Sheet" which included, among other things, a list of relatives, her executor, directions for funeral arrangements and disposition of her belongings at Meadow Lakes, and a statement that her children would "take care of" any gifts or bequests, to be made to Meadow Lakes.
On March 16, 1971 Meadow Lakes received a provisional registration pursuant to § 2.300 of the regulations, N.J.A.C. 5:17-2.12. On or about May 23, 1971 defendant distributed copies of the approved public offering statement to Mrs. Gabrielsen and 47 other residents who had entered subsequent to June 1, 1970. On June 21, 1971 Mrs. Gabrielsen acknowledged in writing the receipt of the public offering statement.
A letter from Mrs. Gabrielsen to the administration of Meadow Lakes dated October 9, 1972 indicated that she was happy with her life there. This was confirmed by her son William C. Gabrielsen, plaintiff in this case and coexecutor of Mrs. Gabrielsen's estate. Mrs. Gabrielsen died on December 28, 1972.
On October 5, 1973 the office of the Attorney General informed the Department of Community Affairs that, in its opinion Meadow Lakes was exempt from the Retirement Community Full Disclosure Act. On December 18, 1973 the Department of Community Affairs informed defendant of the Attorney General's opinion that the residence agreement between Meadow Lakes and its residents was not a lease, declared *480 that Meadow Lakes was not subject to the act, and granted it an exemption from the provisions of the act.
The trial judge held that defendant did not comply with N.J.A.C. 5:17-1.6 in that it did not give decedent written notice before she took up residence in the community that it was preparing a public offering statement and that she would get a copy of it when it was completed. He further held that defendant was therefore not entitled to avail itself of the temporary letter of exemption with respect to the registration requirements of § 5 of the statute.
We note that at the time here involved N.J.A.C. 5:17-1.6(a) provided that a developer who received a temporary letter of exemption "shall deliver to each person who purchases a lot or unit * * * a notice informing him that a public offering statement is being prepared * * *." Effective April 22, 1976, the regulation now provides that the developer deliver such notice "in writing."
Decedent signed her residence agreement bearing the date of September 14, 1970 sometime between September 14 and October 19, 1970, during which period defendant gave oral notice to her and all other incoming residents promptly after their arrival at Meadow Lakes. It is our firm conviction that the oral notice given under the former regulation, in light of the factual context set forth above, was sufficient to satisfy both the language and spirit of N.J.A.C. 5:17-1.6. There was full compliance with the regulation's purpose, i.e. to give notice that the statutory procedure was being followed and that a prospectus was on the way. The notice does not advise the resident of any of his substantive rights. It is only when the prospectus is received that the resident is apprised of his rights and obligations, and at that time the resident has not only the right to void his contract within three full business days N.J.A.C. 5:17-4.3, but only then may he determine if there are any material misstatements or omissions. N.J.S.A. 45:22A-5(b).
In view of our conclusion that defendant is exempt from the Retirement Community Full Disclosure Act and that *481 notwithstanding such exemption defendant did nevertheless comply with the provisions of said act, we need not reach nor do we pass upon the remaining contentions of the parties.
The judgment of the Law Division is reversed and the matter is remanded for entry of judgment in favor of defendant and against the plaintiffs of no cause for action.